# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

TAMMY H.[1],

Plaintiff,

v.                                                          5:18-CV-851 (ATB)

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

---

KIMBERLY A. SLIMBAUGH, ESQ., for Plaintiff
EMILY M. FISHMAN, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## MEMORANDUM-DECISION and ORDER

This matter was referred to me, for all proceedings and entry of a final judgment,

pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in

accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y.

Local Rule 73.1 and the consent of the parties. (Dkt. Nos. 4, 6).

## I.   PROCEDURAL HISTORY

Plaintiff filed an application for Supplemental Security Income ("SSI") on

August 11, 2014, alleging disability beginning August 22, 2002.[2]  (Administrative

Transcript ("T") at 148-54).  Her application was denied initially on January 6, 2015.

---

[1] In accordance with recent guidance from the Committee on Court Administration and
Case Management of the Judicial Conference of the United States, which was adopted by the
Northern District of New York in June 2018 in order to better protect personal and medical
information of non-governmental parties, this Memorandum-Decision and Order will identify the
plaintiff using only her first name and last initial.

[2] Plaintiff subsequently amended her disability onset date to August 11, 2014.  (T. 148,
809).

(T. 57-59, 60-63).  Administrative Law Judge ("ALJ") John P. Ramos conducted a

hearing on December 1, 2016, at which plaintiff testified. (T. 805-37).  A supplemental

hearing was held on May 8, 2017, at which Vocational Expert ("VE") Jeanne Beachler

and medical expert Daryl Didio, Ph.D. testified.  (T. 838-78).

In a decision dated June 23, 2017, the ALJ found that plaintiff was not disabled.

(T. 20-28).  The ALJ's decision became the Commissioner's final decision when the

Appeals Council denied plaintiff's request for review on June 11, 2018. (T. 9-11).

## II.     GENERALLY APPLICABLE LAW

### A.     Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI

disability benefits must establish that she is "unable to engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which

can be expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than twelve months . . . ."  42 U.S.C. § 1382c(a)(3)(A).  In

addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity
> that he is not only unable to do his previous work but cannot, considering
> his age, education, and work experience, engage in any other kind of
> substantial gainful work which exists in the national economy, regardless
> of whether such work exists in the immediate area in which he lives, or
> whether a specific job vacancy exists for him, or whether he would be
> hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections

404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently
> engaged in substantial gainful activity. If he is not, the [Commissioner]
> next considers whether the claimant has a "severe impairment" which
> significantly limits his physical or mental ability to do basic work
> activities. If the claimant suffers such an impairment, the third inquiry is
> whether, based solely on medical evidence, the claimant has an impairment
> which meets or equals the criteria of an impairment listed in Appendix 1 of
> the regulations. If the claimant has such an impairment, the
> [Commissioner ] will consider him disabled without considering
> vocational factors such as age, education, and work experience . . . .
> Assuming the claimant does not have a listed impairment, the fourth
> inquiry is whether, despite the claimant's severe impairment, he has the
> residual functional capacity to perform his past work. Finally, if the
> claimant is unable to perform his past work, the [Commissioner] then
> determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520,

416.920. The plaintiff has the burden of establishing disability at the first four steps.

However, if the plaintiff establishes that her impairment prevents her from performing

her past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

B.    **Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine

whether the correct legal standards were applied and whether substantial evidence

supported the decision. *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Brault v.*

*Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir.

2012). It must be "more than a scintilla" of evidence scattered throughout the

administrative record. *Id.* However, this standard is a very deferential standard of review " – even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision. *Id*. *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony). However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III. FACTS

As of the date of the December 1, 2016 administrative hearing, plaintiff was 49 years old.[3] (T. 810). Plaintiff dropped out of high school before completing the tenth

---

[3]Plaintiff turned 50 years old approximately one month after the hearing on January 9, 2017. (*Id.*)

grade, but subsequently earned her GED. (T. 810-11). Her ex-boyfriend owned a house out of which she rented a bedroom, however plaintiff admitted that this was a "bad" arrangement, and she was attempting to move out. (T. 817). Plaintiff could drive but did not own a vehicle; she depended on others for transportation.[4] (*Id.*).

Plaintiff's most recent employment was with Subway restaurant in 2012. (T. 811). She left this position after a week due to the stress and emotional issues she was experiencing during work. (*Id.*).

With respect to her mental health, plaintiff testified that she was diagnosed as bipolar with post-traumatic stress disorder. (T. 813). Plaintiff treated with psychiatrist Miranda Mohabir, M.D., and attended weekly therapy sessions with social worker Malia VonHunke through Madison County Mental Health. (*Id.*). Dr. Mohabir prescribed plaintiff various psychiatric medications, which helped alleviate some of her symptoms. (T. 815-16). Plaintiff's symptoms generally manifested as depression to the point of "becom[ing] suicidal," loss of interest in "everything," lack of self care, and general withdrawal. (T. 822). She had never been hospitalized for a mental episode, however she had used the "crisis line" several times in the past. (*Id.*). Plaintiff especially struggled with her stress and anxiety when traveling to unfamiliar places, causing her to miss family events. (T. 829-30).

Plaintiff further testified that she had spinal fusion surgery in 2003 as the result

---

[4]In order to get around, plaintiff would either borrow a vehicle from a friend, or have someone take her to her destination. (T. 825). Due to her past involvement in a motor vehicle accident, plaintiff experienced heightened anxiety as the passenger in a vehicle. (T. 825-26). She testified to having a "great many people who drive [her] around," however her anxiety and stress prevented her from using public transportation. (T. 824).

of injuries sustained in a car accident, and consequently suffered lifting and standing limitations. (T. 813). She also had left side nerve damage, neck pain, and bilateral carpal tunnel that flared up occasionally. (T. 813, 819). Plaintiff admitted that she did not follow up with her primary care physician as often as she should, because her anxiety sometimes prevented her from leaving the house. (T. 816-17). Although she previously treated with a pain management provider for her neck, Medicaid dropped her provider's coverage, and plaintiff's anxiety prevented her from commencing treatment with a different practice. (T. 819). Plaintiff testified that the injections to her neck and low back had been "helping . . . a great deal" with her pain. (*Id.*).

Plaintiff further testified that she could do her own laundry and wash the dishes, as long as she was not standing for a long period of time. (T. 818). Sitting for a long period of time caused her left leg to bother her. (*Id.*). Plaintiff did not have a problem walking on flat surfaces. (T. 819). Plaintiff usually took someone shopping with her to carry the groceries.[5] (820). She relied on a cart to assist her in walking through the store. (*Id.*). At home, plaintiff vacuumed when needed. (T. 826-27). She occupied herself by watching television and coloring. (T. 827). She went to the casino once every six months to go to dinner and use her "free play," however she felt paranoid in such a crowded area. (T. 828-29). Plaintiff had one friend with whom she socialized on occasion. (T. 820). She did not sleep well without her medicine, and she experienced nightmares related to her post-traumatic stress. (T. 821). Plaintiff testified

---

[5]Plaintiff was comfortable at the store she regularly patronized, because she knew the layout and "nobody knows [her] there," so there was no "stopping in the aisles and talking." (T. 824-25). She experienced panic attacks when shopping at less familiar stores. (T. 825).

that at least once a week she experienced feelings of not wanting to do "anything" or see people. (T. 831-32). Her medication helped decrease the frequency of her "bad" days, however her symptoms were still "debilitating." (T. 832).

Plaintiff was accompanied to the hearing by a representative from Liberty Resources. (T. 820). Plaintiff testified that she received various services from Liberty Resources, including housing assistance, legal referrals, and personal support. (820-21).

The parties' pleadings provide a detailed statement of the medical and other evidence of record. Rather than recite this evidence at the outset, the court will discuss the relevant details below, as necessary to address the issues raised by plaintiff.

## IV.  THE ALJ'S DECISION

The ALJ first found that plaintiff had not engaged in substantial gainful activity since her application date of August 11, 2014. (T. 22). Next, the ALJ found that plaintiff had the following severe impairments at step two of the sequential evaluation: degenerative disc disease of the lumbar spine; bipolar disorder; panic disorder; and anxiety disorder. (*Id.*). At the third step, the ALJ determined that plaintiff's impairments did not meet or medically equal the criteria of any listed impairments in Appendix 1 to 20 C.F.R. Part 404, Subpart P. (T. 24).

The ALJ found the following at step four of the analysis:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 C.F.R. § 416.967(b), with the ability to lift/carry 20 pounds occasionally and 10 pounds frequently; sit 6 hours in a routine 8-hour workday; and stand/walk 6 hours total in such a workday; and she retains the ability to understand and

follow simple instructions and directions; perform simple tasks with supervision and independently; maintain attention/concentration for simple tasks and regularly attend to a routine and maintain a schedule; she can relate to and interact with others to the extent necessary to carry out simple tasks and she can handle reasonable levels of simple work-related stress in that she can make decisions directly related to the performance of simple work and handle usual workplace changes and interactions associated with simple work. She is limited to simple goal-oriented work rather than work involving a production rate pace.

(T. 25). In making this RFC determination, the ALJ stated that he considered all of the plaintiff's symptoms, and the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. [§] 416.929" and Social Security Ruling ("SSR") 96-4p. (*Id.*). Finally, the ALJ stated that he considered opinion evidence pursuant to 20 C.F.R. § 416.927 and SSR 96-2p, 96-5p, 96-6p and 06-3p. (*Id.*)

The ALJ also found that plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but that plaintiff's statements regarding the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the record evidence. (T. 26). The ALJ then determined that plaintiff had no past relevant work. (*Id.*). However, relying on the VE's testimony, the ALJ found that there were jobs that existed in significant numbers in the national economy that plaintiff could perform. (T. 27). Accordingly, the ALJ determined that plaintiff was not disabled from the application date of August 11, 2014 through the date of the ALJ's decision. (T. 28).

## V.    ISSUES IN CONTENTION

Plaintiff raises the following arguments:

(1)    The ALJ failed to properly evaluate the opinion of plaintiff's treating psychiatrist, Dr. Miranda Mohabir.

(2)    The ALJ failed to evaluate the intensity, persistence, and limiting effects of plaintiff's impairments in accordance with SSR 16-3p.

(3)    The ALJ's RFC for light work is not supported by substantial evidence.

(4)    The ALJ failed to sufficiently develop the record.

(Plaintiff's Brief ("Pl.'s Br.") at 16-22).  Defendant argues that the Commissioner's determination was supported by substantial evidence and should be affirmed.

(Defendant's Brief ("Def.'s Br.") at 14-25).  For the following reasons, this court agrees with the plaintiff and will order remand to the Commissioner for further proceedings.

## DISCUSSION

## VI.    RFC EVALUATION/TREATING PHYSICIAN/DUTY TO DEVELOP RECORD

### A.    Legal Standards

#### 1.    RFC

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ."  A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent

work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)); *Babcock v. Berryhill,* No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

      In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R. §§ 404.1545, 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019); *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010). An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities. *Roat v. Barnhart,* 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010); *Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183, *Stephens v. Colvin,* 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions,

citing specific medical facts, and non-medical evidence. *Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at \*11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at \*7).

## 2. Weight of the Evidence/Treating Physician

In making a determination, the ALJ weighs all the evidence of record and carefully considers medical source opinions about any issue. SSR 96-5p, 1996 WL 374183, at \*2-3 (1996). Under 20 C.F.R. §§ 404.1527(e) and 416.927(e), some issues are not "medical issues," but are "administrative findings." The responsibility for determining these issues belongs to the Commissioner. *See* SSR 96-5p, 1996 WL 374183, at \*2. These issues include whether the plaintiff's impairments meet or equal a listed impairment; the plaintiff's RFC; how the vocational factors apply; and whether the plaintiff is "disabled" under the Act. *Id.*

In evaluating medical opinions on issues that are reserved to the Commissioner, the ALJ must apply the factors listed in 20 C.F.R. §§ 404.1527(d) and 416.927(d). The ALJ must clearly state the legal rules that he applies and the weight that he accords the evidence considered. *Drysdale v. Colvin*, No. 14-CV-722, 2015 WL 3776382, at \*2 (S.D.N.Y. June 16, 2015) (citing *Rivera v. Astrue*, No. 10 Civ. 4324, 2012 WL 3614323, at \*8 (E.D.N.Y. Aug. 21, 2012) (citation omitted)).

"Although the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician, . . . the opinion of the treating physician is

not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record . . . ." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). If an ALJ decides not to give the treating source's records controlling weight, then he must explicitly consider the four *Burgess* factors: "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Estrella v. Berryhill*, 925 F.3d 90, 95-96 (2d Cir. 2019) (quoting *Burgess v. Astrue*, 537 F. 3d 117, 120 (2d Cir. 2008)). Should an ALJ assign less than controlling weight to a treating physician's opinion and fail to consider the above-mentioned factors, this is a procedural error. *Id.* at 96. It is impossible to conclude that the error is harmless unless a "searching review of the record . . . assures us that the substance of the treating physician rule was not traversed." *Id.*

### 3. Evaluation of Symptoms

In evaluating a plaintiff's RFC for work in the national economy, the ALJ must take the plaintiff's reports of pain and other symptoms into account. *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). The ALJ must "'carefully consider'" all the evidence presented by claimants regarding their symptoms, which fall into seven relevant factors including 'daily activities' and the 'location, duration, frequency, and intensity of

[their] pain or other symptoms.'" *Del Carmen Fernandez v. Berryhill*, No. 18-CV-326, 2019 WL 667743, at *9 (S.D.N.Y. Feb. 19, 2019) (citing 20 C.F.R. § 404.1529(c)(3); SSR 16-3p, *Titles II and XVI: Evaluation of Symptoms in Disability Claims*, 81 FR 14166-01 at 14169-70, 2016 WL 1020935 (Mar. 16, 2016)).

In 2016 the Commissioner eliminated the use of term "credibility" from the "sub-regulatory policy" because the regulations themselves do not use that term. SSR 16-3p, 81 FR at 14167. Instead, symptom evaluation tracks the language of the regulations.[6] The evaluation of symptoms involves a two-step process. First, the ALJ must determine, based upon the objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged . . . ." 20 C.F.R. §§ 404.1529(a), (b); 416.929(a), (b).

If so, at the second step, the ALJ must consider "'the extent to which [the claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the [objective medical evidence] and other evidence to decide how [the claimant's] symptoms affect [her] ability to work.'" *Barry v. Colvin*, 606 F. App'x 621, 623 (2d Cir. 2015) (citing inter

---

[6] The standard for evaluating subjective symptoms has not changed in the regulations. Rather, the term "credibility" is no longer used, and SSR 16-3p makes it clear that the evaluation of the claimant's symptoms is not "an evaluation of the claimant's character." 81 FR at 14167. The court will remain consistent with the terms as used by the Commissioner.

alia 20 C.F.R. § 404.1529(a); *Genier v. Astrue*, 606 F.3d at 49) (alterations in original).[7]

If the objective medical evidence does not substantiate the claimant's symptoms, the ALJ must consider the other evidence. *Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013) (citing superceded SSR 96-7p). The ALJ must assess the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

The ALJ must provide specific reasons for the determination. *Cichocki v. Astrue*, 534 F. App'x at 76. However, the failure to specifically reference a particular relevant factor does not undermine the ALJ's assessment as long as there is substantial evidence supporting the determination. *Id. See also Del Carmen Fernandez v. Berryhill*, 2019 WL 667743 at *11 (citing *Rousey v. Comm'r of Soc. Sec.*, 285 F. Supp. 3d 723, 744 (S.D.N.Y. 2018)). "[R]emand is not required where 'the evidence of record allows the

---

[7] The court in *Barry* also cited SSR 96–7p, 1996 WL 374186, at *2 (July 2, 1996), which was superceded by SSR 16-3p. As stated above, the factors considered are the same under both rulings. The 2016 ruling has removed the emphasis on "credibility."

court to glean the rationale of an ALJ's decision.'" *Cichocki v. Astrue*, 534 F. App'x at

76 (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)).

### 4. Duty to Develop the Record

Given the remedial intent of the Social Security statute and the non-adversarial

nature of benefits proceedings, an ALJ has an affirmative duty, even if the claimant is

represented by counsel, to develop the medical record if it is incomplete. *Tejada v.*

*Apfel*, 167 F.3d 770, 774 (2d Cir. 1999); 20 C.F.R. §§ 404.1512 (d), 416.912(d) ("We

will make every reasonable effort to help you get medical reports from your own

medical sources when you give us permission to request the reports.").  Furthermore,

"[t]he duty of an ALJ to develop the record is 'particularly important' when obtaining

information from a claimant's treating physician due to the 'treating physician'

provisions in the regulations." *Dickson v. Astrue*, No. 1:06-CV-511 (NAM/GHL), 2008

WL 4287389, at *13 (N.D.N.Y. Sept.17, 2008).

In furtherance of the duty to develop the record, an ALJ may re-contact medical

sources if the evidence received from the treating physician or other medical sources is

inadequate to determine disability, and additional information is needed to reach a

determination.  20 C.F.R. §§ 404.1512(e), 416.912(e).[8]  Although the ALJ must attempt

---

[8] Effective March 26, 2012, the Commissioner amended these regulations to remove
former paragraph (e) and the duty it imposed on ALJs to re-contact a disability claimant's
treating physician under certain circumstances. The current regulations apply to plaintiff's case.
*See Jimenez v. Astrue*, No. 12 Civ. 3477, 2013 WL 4400533, at *11 (S.D.N.Y. Aug. 14, 2013)
(noting that even though the regulations were amended to remove the provision requiring the
ALJ to recontact a treating physician to resolve an ambiguity in the record, the regulations still

to fill in any "clear gaps" in the administrative record, "where there are no obvious gaps . . . and where the ALJ already possesses a 'complete medical history,'" the ALJ is under no obligation to seek additional information. *Rosa v. Callahan*, 168 F.3d at 79, n.5.

**B. Application**

In assessing the opinions of plaintiff's psychiatrist, Dr. Mohabir, the ALJ was required to apply the treating physician rule, under which a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record[.]" 20 C.F.R. § 416.927(c)(2). As previously discussed, if the ALJ declines to afford controlling weight to a treating physician's medical opinion, he or she must consider the various *Burgess* factors to determine how much weight to give to the opinion. *Estrella v. Berryhill,* 925 F.3d at 95-96 (citation omitted). Moreover, when the ALJ chooses not to give the treating physician's opinion controlling weight, he must "give good reasons in his notice of determination or decision for the weight [he] gives [the claimant's] treating source's opinion." *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998) (quoting C.F.R. §§ 404.1527(d)(2), 416.927(d)(2)); *Perez v. Astrue*, No. 07-CV-958, 2009 WL 2496585, at

---

"contemplate the ALJ recontacting the treating physicians when 'the additional information needed is directly related to that source's medical opinion'").

16

*8 (E.D.N.Y. Aug. 14, 2009) ("Even if [the treating physician's] opinions do not merit controlling weight, the ALJ must explain what weight she gave those opinions and must articulate good reasons for not crediting the opinions of a claimant's treating physician."); *Santiago v. Barnhart,* 441 F. Supp. 2d 620, 627 (S.D.N.Y. 2006) ("Even if the treating physician's opinion is contradicted by substantial evidence and is thus not controlling, it is still entitled to significant weight because the treating source is inherently more familiar with a claimant's medical condition than are other sources.") (citation omitted)). "Those good reasons must be supported by the evidence in the case record, and must be sufficiently specific . . ." *Harris v. Colvin,* 149 F. Supp. 3d 435, 441 (W.D.N.Y. 2016) (internal quotation marks omitted). "A failure by the ALJ to provide 'good reasons' for not crediting the opinion of a treating physician is a ground for remand." *Ridge v. Berryhill,* 294 F. Supp. 3d 33, 59 (E.D.N.Y. 2018) (citing *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999); *Halloran v. Barnhart*, 362 F.3d at 33 ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician[']s opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion.").

In this case, Dr. Mohabir began treating plaintiff in June 2014, and the record

reflects that they met once every 1-3 months for over two years.[9] (T. 394). On July 21, 2015, Dr. Mohabir completed a mental impairment questionnaire relative to plaintiff's ability to function in a work setting. (T. 361-66). With respect to unskilled work, Dr. Mohabir opined that plaintiff was unlimited in her ability to understand and remember very short and simple instructions, carry out very short and simple instructions, ask simple questions or request assistance, and be aware of normal hazards and take appropriate precaution. (T. 363). Plaintiff was found to be limited but satisfactory in her ability to maintain regular attendance and be punctual within customary, usually strict tolerances; and seriously limited but not precluded in her ability to remember work like procedures, maintain attention for two hour segments, and make simple work related decisions. (*Id.*). Dr. Mohabir also determined that plaintiff was unable to meet competitive standards with respect to sustaining an ordinary routine without special supervision, working in coordination or proximity of others without being unduly distracted, accepting instructions and responding appropriately to criticism from supervisors, and getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes. (*Id.*). Plaintiff was found to have no useful ability to function with respect to completing a normal workday and workweek without interruptions from psychologically based symptoms, performing at a consistent pace

_____

[9]The parties do not dispute that Dr. Mohabir is a treating physician for purposes of the ALJ's disability analysis. (Pl.'s Br. at 16-17; Def.'s Br. at 15-18).

without an unreasonable number and length of rest periods, responding appropriately to changes in a routine work setting, and dealing with normal work stress. (*Id.*). Dr. Mohabir further opined that plaintiff exhibited no more than mild restrictions in her activities of daily living, but that she had marked limitations relative to difficulties in maintaining social functioning and deficiencies of concentration, persistence or pace. (T. 365). Dr. Mohabir indicated that plaintiff exhibited four or more repeated episodes of decompensation within a 12 month period, each of at least two weeks duration. (*Id.*).

On April 18, 2016, Dr. Mohabir completed another mental impairment questionnaire, assessing more restrictive limitations, inasmuch as she found that plaintiff was unable to meet competitive standards in remembering work-like procedures; maintaining attention for two hour segments; maintaining regular attendance and being punctual with customary, usually strict tolerances; sustaining an ordinary routine without special supervision; working in coordination with or in proximity to others without being unduly distracted; making simple work related decisions, completing a normal workday and workweek without interruptions from psychologically based symptoms; performing at a consistent pace without an unreasonable number and length of rest periods; accepting instructions and responding appropriately to criticism from supervisors; responding appropriately to changes in a routine work setting; and dealing with normal work stress. (T. 384). Dr. Mohabir further opined that plaintiff had moderate limitations in her activities of daily living,

marked limitations with respect to maintaining social functioning and extreme

limitations with respect to deficiencies of concentration, persistence or pace. (T. 386).

Dr. Mohabir further indicated that plaintiff exhibited repeated episodes of

decompensation. (*Id.*).

On October 17, 2016, Dr. Mohabir completed a third mental impairment

questionnaire. (T. 394-99). She opined that plaintiff was either unable to meet

competitive standards or had no useful ability to function in the majority of categories

of mental abilities and aptitudes required for unskilled work. (T. 396). Dr. Mohabir

further opined that plaintiff had moderate limitations as to restrictions of activities of

daily living and extreme limitations as to difficulties in maintaining social functioning

and deficiencies of concentration, persistence or pace. (T. 398).

The ALJ's "discussion" of Dr. Mohabir's opinions, as well as the remaining

opinion evidence of record, consisted of the following paragraph in the ALJ's written

decision:

> As for the opinion evidence, the consultative examinations are
> granted significant weight based on their program and professional
> expertise and their direct examination of the claimant. The
> medical expert is given significant weight based also upon such
> expertise and ability to review the entire medical record. **But
> much less weight can go to the opinions of Dr. Mohabir or the
> treating counselor, since the conclusions there are simply not
> supported in the associated clinical reporting, and are not
> consistent with the Agency experts.** Moreover, based on the now
> enhanced record, the claimant simply seems more functional than
> the treating source would describe her. Indeed, as pointed out by

the medical expert of record, claimant has remained fairly overall functional during all of her alleged disability.

(T. 26) (emphasis added). As set forth in further detail throughout the remainder of this decision, the ALJ's purported explanation for the weight afforded to Dr. Mohabir's opinion, as well as the remaining opinion evidence of record, is insufficient to support his ultimate determination, and compels this court to order remand for further proceedings.

First, the ALJ failed to explicitly consider the majority of the *Burgess* factors set forth in 20 C.F.R. § 416.927©) in weighing Dr. Mohabir's opinion. The ALJ did not discuss the frequency, length, nature or extent of plaintiff's years-long treating relationship with Dr. Mohabir, nor the fact that Dr. Mohabir is a psychiatrist specializing in the field of mental health disorders. Moreover, the ALJ failed to discuss the medical evidence that supported Dr. Mohabir's opinion. *See* 20 C.F.R. § 416.927(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion."). For example, the ALJ neglected to address evidence that plaintiff's anxiety and depression were exacerbated when she was presented with stressful situations, as indicated by both Dr. Mohabir and social worker Maelea VonHunke in their treatment notes, and consistent with their opinion evidence.[10] While the court is

_____

[10]On August 15, 2014, Dr. Mohabir noted plaintiff's mood was depressed and affect was constricted; further noting plaintiff's report that she was at Madison County Mental Health Clinic

cognizant that an ALJ need not explicitly walk through all the relevant factors, so long as the court can conclude that the ALJ applied the substance of the treating physician rule, in this case it is not clear from the written decision that the ALJ considered any of the requirements of the treating physician rule when weighing Dr. Mohabir's opinions.

The ALJ otherwise failed to provide "good reasons" for the weight afforded to Dr. Mohabir's opinions. In granting Dr. Mohabir's opinions "much less weight," the ALJ professed to rely on the fact that her conclusions (1) were not supported in the "associated clinical reporting," and (2) were not consistent with the Agency experts. (T. 26). With respect to the former, as previously discussed, the evidence of record reflects an arguable degree of support for Dr. Mohabir's opinions, and the lack of any explanation or discussion by the ALJ regarding this evidence prevents the court from further meaningful review. Moreover, plaintiff claims that the ALJ erred in relying on alleged inconsistencies between Dr. Mohabir and VonHunke's "clinical reporting" and their opinions as the basis for affording their opinions less weight, because the ALJ refused to develop a complete record of plaintiff's mental health treatment history. This

---

the day before, "in crisis." (T. 315). On August 21, 2014, VonHunke noted that plaintiff presented as anxious and overwhelmed with respect to seeking housing. (T. 293). In an employability assessment prepared the same day, VonHunke opined that plaintiff's anxiety and symptoms of depression prevent her from obtaining and maintaining employment at this time, and that plaintiff was very limited in her ability to maintain attention and concentration as well as function in a work setting at a consistent pace. (T. 354). On October 28, 2014, Dr. Mohabir noted that plaintiff's mood was anxious and affect was constricted, further opining that plaintiff was too anxious to function in a work-like setting. (T. 308-09). On July 21, 2015, Dr. Mohabir noted that plaintiff's anxiety and panic limited her interaction, concentration and independence. (T. 364). On April 18, 2016, Dr. Mohabir noted that plaintiff's prognosis was "poor," and that "any stress puts [plaintiff] in a panic attack." (T. 382).

court agrees.

The Second Circuit has held that "an ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record." *Delgado v. Berryhill,* No. 3:17-CV-54, 2018 WL 1316198, at *11 (D. Conn. Mar. 14, 2018) (citing *Rosa v. Callahan*, 168 F.3d at 79). Where the record contains a treating source opinion, but the opinion is incomplete, unclear, or inconsistent, the Second Circuit has held that the ALJ's duty to develop the record requires the ALJ to seek additional information. *Id.* (citing *Selian*, 708 F.3d at 421). Furthermore, an "ALJ must make every reasonable effort to help [the claimant] obtain medical reports from the claimant's medical sources, so long as permission is granted to request such reports. *Nesiba O. v. Comm'r of Soc. Sec.*, No. 517-CV-0931 (TWD), 2019 WL 464882, at *6 (N.D.N.Y. Feb. 6, 2019) (citations omitted). "The ALJ's duty to develop the record is enhanced when the disability in question is a psychiatric impairment." *Champion v. Berryhill,* No. 16-CV-4723, 2017 WL 4404473, at *16 (S.D.N.Y. Sept. 14, 2017) (citing *Lacava v. Astrue*, No. 11-CV-7727, 2012 WL 6621731, at *11-12 (S.D.N.Y. Nov. 27, 2012)).

Here, the available evidence indicates that plaintiff obtained mental health treatment through Madison County Mental Health in the form of weekly therapy session with social worker VonHunke, commencing in 2014 and progressing through 2016. (T. 281-301). Nevertheless, the administrative record lacks the majority of plaintiff's

therapy notes relative to this period.[11] Specifically, only seven therapy notes are included in the record, covering the period from August 2014 through October 2014. (T. 292-301). The therapy notes for 2015 through 2016 are notably absent from the record, despite the fact plaintiff was treating at the time.

The ALJ was repeatedly made aware of this evidentiary gap in the record prior to issuing his written decision. On November 29, 2016, plaintiff's counsel contacted ALJ Ramos requesting that a subpoena be issued for plaintiff's therapy notes from 2015 and 2016.[12] (T. 197). At the initial administrative hearing on December 1, 2016, plaintiff's counsel renewed his request that the ALJ subpoena plaintiff's records from the County. (T. 808-09). Nevertheless, the ALJ ultimately refused to subpoena plaintiff's missing therapy records, despite plaintiff's voiced concern that these records could contain relevant mental examination findings and other pertinent evidence regarding plaintiff's mental health condition. (T. 876-77).

The ALJ's position with respect to obtaining plaintiff's therapy records was improper under the circumstances. First, despite the ALJ's contention to the contrary,

---

[11]Although not raised by the plaintiff, this court notes that Dr. Mohabir's records also appear to contain a substantial gap. The evidence reflects that plaintiff treated with Dr. Mohabir every 1-3 months between 2014 and 2016, however the administrative record is, without explanation, devoid of Dr. Mohabir's treatment notes for almost a year and a half, between March 2015 and August 2016. (T. 391-92).

[12]It appears that the Madison County Department of Mental Health would not provide the therapy notes without a subpoena, and previously indicated as much to plaintiff's counsel. (T. 197). It is unclear how plaintiff's 2014 therapy notes made it into the administrative record.

this court has not been presented with any policy that barred him from attempting to obtain the missing therapy records. Although Agency medical authorizations explicitly exclude "psychotherapy notes" from their standard request for release, the ALJ had the authority to subpoena medical evidence on behalf of the plaintiff. *See Ana Rosado v. Berryhill*, No. 18-CV-2177, 2019 WL 1993996, at *11 (S.D.N.Y. Apr. 5, 2019) (citing *Oliveras ex. rel. Gonzalez v. Astrue*, No. 07 Civ. 2841, 2008 WL 2262618, at *6 (In carrying out the duty to develop the record, "[t]he ALJ also has authority to subpoena medical evidence on behalf of the claimant.")). Although the Second Circuit has explained that the decision to issue a subpoena is within the "sound discretion" of the ALJ, the ALJ's discretion is not unlimited, and "he cannot ignore essential available medical evidence." *Outman v. Comm'r of Soc. Sec.,* No. 1:16-CV-00988, 2018 WL 3688312, at *2 (W.D.N.Y. Aug. 2, 2018) (internal citations omitted); *see also Kumar v. Berryhill,* No. 3:16-CV-01196, 2017 WL 4273093, at *5 (D. Conn. Sept. 26, 2017) ("[A] failure to subpoena medical records which were 'reasonably necessary' is harmful error."). Here, in light of the substantial lack of treatment notes from plaintiff's mental health providers for 2015 and 2016, and the fact that the ALJ's disability determination relied heavily on plaintiff's mental limitations, the ALJ should have made "every reasonable effort" to fully develop the record. *See Carr v. Comm'r*, No. 16 Civ. 5877, 2017 WL 1957044, at *10 (S.D.N.Y. May 11, 2017) (The ALJ's duty is particularly pressing where the records sought are "central to the disability determination.").

Moreover, it was improper for the ALJ (and medical expert) to rely on inconsistencies between the *available* "associated clinical report[s]" of plaintiff's mental health providers and their opined mental limitations, without having the relevant treatment history in its entirety. The ALJ should have made reasonable efforts, including by subpoena if necessary, to collect the missing therapy notes, and his failure to do so precluded him from relying on any purported inconsistencies as a basis for affording Dr. Mohabir's opinions minimal weight.

The second reason proffered by the ALJ for affording limited weight to Dr. Mohabir's opinion is equally unavailing, specifically in stating that Dr. Mohabir's opinion is "not consistent with the Agency experts." (T. 26). As a threshold matter, the ALJ's vagueness as to which Agency expert he is referring to once again hinders any meaningful discussion of the issues presented. The court will assume[13] that the ALJ is referring to non-examining medical expert Dr. Didio. Nevertheless, Dr. Didio's opinion and testimony in this matter fail to constitute good reason for affording Dr. Mohabir's opinion less than controlling weight.

With regard to non-examining physicians' opinions, "[t]he general rule is that 'the

_____

[13]Plaintiff previously filed an application for benefits in 2012, which was ultimately denied by the Commissioner. (T. 797-80, 29-45). Portions of plaintiff's records relative to the prior application are included in the administrative record presently before this court, including an April 4, 2014 mental MSS and Medical Interrogatory prepared by Chaukwuemeka Kachi Efobi, M.D. (T. 787-95). The ALJ, however, makes no reference to Dr. Efobi's medical opinion throughout his decision, and this court will assume that any reference made by the ALJ in his decision to the "medical expert" is to Dr. Didio.

written reports of medical advisors who have not personally examined the claimant deserve little weight in the overall evaluation of disability. The advisers' assessment of what other doctors find is hardly a basis for competent evaluation without a personal examination of the claimant." *Soto-Rivera v. Comm'r of Soc. Sec.,* No. 17-CV-6675, 2019 WL 2718236, at *3 (W.D.N.Y. June 28, 2019) (quoting *Vargas v. Sullivan*, 898 F.2d 293, 295–96 (2d Cir. 1990)); *Filocomo v. Chater*, 944 F. Supp. 165, 169 (E.D.N.Y. 1996) ("The conclusions of a physician who merely reviews a medical file and performs no examination are entitled to little if any weight.").

Notwithstanding the general rule, the opinion of a non-examining source may be credited over that of an examining physician under the proper circumstances. *See Camille v. Colvin*, 652 F. App'x 25, 28 (2d Cir. 2016) (the regulations permit the opinions of non-examining sources to override the opinions of treating sources provided they are supported by the evidence in the record) (internal citation omitted); *Dronckowski v. Comm'r of Soc .Sec.,* No. 1:18-CV-27, 2019 WL 1428038, at *5 (W.D.N.Y. Mar. 29, 2019) (citing *Allen v. Comm'r of Soc. Sec.*, 351 F. Supp. 3d 327, 336-37 (W.D.N.Y. 2018)). However, the regulations caution that "because non-examining sources have no examining or treating relationship with [a claimant], the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions." *D'augustino v. Colvin,* No. 15-CV-6083, 2016 WL 5081321, at *2 (W.D.N.Y. Sep. 16, 2016) (citation omitted). It is incorrect for

an ALJ to place significant weight on the findings of a non-examining source that differs

from other medical evidence of record and is not adequately explained. *Id.* (citing

*Frederick v. Barnhart*, 317 F. Supp. 2d 286, 298-99 (W.D.N.Y. 2004) (finding error

where the ALJ relied primarily on the opinion of the non-examining, non-treating review

physicians)). Even where a non-examining opinion is afforded weight, it alone cannot be

considered substantial evidence, nor can it constitute "good reason" for the limited

weight given to a treating source opinion. *Walters v. Berryhill*, No. 3:16-CV-2113, 2018

WL 2926575, at *7 (D. Conn. June 11, 2018) ("Although inconsistency between a

treating physician's and consulting physician's opinions can represent a sufficient

inconsistency to justify not according binding weight to the treating physician's opinion .

. . it would be circular to allow that same inconsistency, by itself, to determine the

relative weight to be accorded the consulting and treating physicians' respective

opinions.  Such relative weighing decisions must rely on some external evidence or

additional factors.") (internal citations and quotations omitted); *Seekins v. Astrue,* No.

3:11-CV-264, 2012 WL 4471264, at *4 (D. Conn. Sept. 27, 2012) (citing *Kahle v.

Comm'r of Soc. Sec.*, 845 F. Supp. 2d 1262 (M.D. Fla. 2012) ("The opinion of a non-

examining physician does not establish the good cause necessary to reject the opinion of

a treating physician.")).

Here, psychologist Dr. Didio provided various opinions of plaintiff's mental

limitations based on his review of the medical evidence of record, which, presumably,

did not include all of the relevant treatment notes of Dr. Mohabir and social worker

VonHunke. Dr. Didio did not have an opportunity to examine the plaintiff prior to

rendering his opinions, and it is clear that the ALJ was not entitled to favor Dr. Didio's

opinion over that of Dr. Mohabir based on a comparison of the two opinions in a

vacuum. As such, the propriety of the weight afforded to Dr. Didio's opinion hinges on

the degree to which the non-examining psychologist provided adequate supporting

evidence for his conclusions. *See D'augustino*, 2016 WL 5081321, at *2.

On December 15, 2016, Dr. Didio completed a Medical Source Statement of

Ability to Do Work-Related Activities (Mental) and a Mental Interrogatory on behalf of

plaintiff. (T. 433-37, 438-40). In contrast to Dr. Mohabir's more severe limitations, Dr.

Didio generally opined that plaintiff had no more than moderate limitations for any work

related mental activities. (T. 434, 438-39). In support of his opinion, Dr. Didio

provided written commentary and cited to various evidence of record. (*Id.*).

Furthermore, Dr. Didio appeared via telephone at the May 8, 2017 hearing, wherein he

provided testimony regarding the evidence he relied on to support his medical opinions.

(T. 848-70).

Although Dr. Didio 'supported' his opinion, as previously described, the actual

bases he provided for his findings were largely unsupported by the record. For example,

Dr. Didio found that plaintiff's ability to "negotiate the sale of her house [and] horse"

suggested that she was not as limited as Dr. Mohabir opined. (T. 439, 855-56). The

record, however, actually reflects that plaintiff was being forced out of her ex-boyfriend's home, which was being foreclosed on at the time, and had no part in "negotiating the sale" of his house. (T. 292, 294, 313, 315, 855). The record further indicates that plaintiff had to give her horse away, due to her living situation. (T. 297, 855-57).[14] Dr. Didio also took issue with the GAF[15] score that Dr. Mohabir attributed to plaintiff as indicating milder limitations than those expressed in Dr. Mohabir's ultimate opinion. (T. 853, 855). However, Dr. Didio proceeded to testify that the GAF scoring system had been discontinued as inconsistent,[16] and that he himself was "not a fan" of the scoring system. (Id.). He further opined that Dr. Mohabir's opinion plaintiff could "manage her own funds in her own interest" (T. 399) was "the most obvious"

---

[14]Upon examination by the plaintiff's attorney on this issue, Dr. Didio agreed that the evidence of record indicated that the house at issue was actually owned by plaintiff's boyfriend, and it was foreclosed on. (T. 855). He also conceded that plaintiff had to give her horse away. (T. 855-57). Nevertheless, Dr. Didio indicated that these facts did not change his opinion, because "[plaintiff] was able to negotiate the discharge of these things somehow." (T. 856.)

[15]The GAF is a 100 point scale. A score of 41-50 indicates "serious symptoms," 51-60 indicates "moderate symptoms," 61-70 indicates "some mild symptoms," and 71-80 indicates that if symptoms are present, they are "transient" and "expectable reactions to psycho-social stressors," resulting in "no more than a slight impairment in social, occupational, or school functioning." AMERICAN PSYCHIATRIC ASSN., DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32-34 (4th Ed. Text Revision 2000) ("DSM-IV-TR").

[16]Moreover, recent decisions in the Second Circuit have recognized that "the GAF is a less useful metric than some earlier cases report." Bass v. Berryhill, No. 16 Civ. 6721, 2017 WL 4457162, at *9 (S.D.N.Y. Oct. 5, 2017) (quoting Tilles v. Comm'r of Soc. Sec., No. 13-CV-6743, 2015 WL 1454919, at *33 (S.D.N.Y. Mar. 31, 2015)); see also Maldonado v. Colvin, No. 15 Civ. 4016, 2017 WL 775829, at *18 n.17 (S.D.N.Y. Feb. 28, 2017) (noting that "[a] GAF score is of limited value"); Gonzalez v. Colvin, No. 15 Civ. 5011, 2016 WL 6780000, at *10 n.10 (S.D.N.Y. Nov. 16, 2016) ("[T]he utility of this metric is debatable, particularly after its exclusion from the fifth edition of the Diagnostic and Statistical Manual of Mental Disorders.") (quoting Otanez v. Colvin, No. 14 Civ. 8184, 2016 WL 128215, at *12 n.8 (S.D.N.Y. Jan. 12, 2016)).

inconsistency with Dr. Mohabir's restrictive mental limitations. (T. 852-53). However, he failed to provide any follow up explanation for how plaintiff's ability to handle her expenses was inconsistent with a lack of coping skills to manage stressors in an unskilled work setting. *See Moss v. Colvin*, No. 1:13-CV-731, 2014 WL 4631884, at *33 (S.D.N.Y. Sept. 16, 2014) ("There are critical differences between activities of daily living (which one can do at his own pace when he is able) and keeping a full time job."). Dr. Didio further implied that plaintiff's use of a crisis hotline for psychiatric patients was evidence supporting his opinion that plaintiff could sustain gainful employment, noting that it was "an appropriate use of the safety net of our society." (T. 862). The evidence discussed by the ALJ as further support of Dr. Didio's less restrictive opinion is equally unavailing. For example, the ALJ found that the presence of emergency contact phone numbers in plaintiff's psychiatric records was inconsistent with plaintiff's contention that she had no significant socialization with friends or family. (T. 26).

Although defendant now presents this court with other perceived inconsistencies regarding Dr. Mohabir's opinions (Def.'s Br. at 17), these facts are absent from the ALJ's opinion and "defendant's after-the-fact explanation as to why the ALJ rejected [Dr. Mohabir's] opinion cannot serve as a substitute for the ALJ's findings." *Hayden v. Comm'r of Soc. Sec.,* 338 F. Supp. 3d 129, 137 (W.D.N.Y. Oct. 10, 2018) (citing, *inter alia, Snell v. Apfel*, 177 F.3d at 134 (a reviewing court may not accept appellate counsel's *post hoc* rationalizations for agency action)). Moreover, many of the arguments raised by

defendant are without support.  For example, defendant argues that it was inaccurate for Dr. Mohabir to opine that plaintiff has had three episodes of decompensation within 12 months, because plaintiff "denied ever being hospitalized for mental health issues." (Def.'s Br. at 17).  However, the form in question specifically defines "episodes of decompensation" as "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence or pace.  Episodes of decompensation may be demonstrated by an exacerbation of symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two)."  (T. 398).  As such, the fact that plaintiff was never hospitalized bears no inconsistency with Dr. Mohabir's statement with respect to this domain.  Defendant's argument that Dr. Mohabir and VonHunke's restrictive opinions are inconsistent with a finding that plaintiff had "successfully used skills to reduce her anxiety" is equally as weak.  (Def.'s Br. at 16). *See Byrne v. Berryhill*, 752 F. App'x 96, 98 (2d Cir. 2019) ("no apparent contradiction" between limitations described in treating physician report and fact that physical therapy and home exercise had been "helpful.").

For the foregoing reasons, this court finds that the ALJ failed to provide good

reasons for assigning limited weight to Dr. Mohabir's opinions.[17] "The requirement that the Commissioner provide good reasons is particularly important in cases where, as here, ALJs issue decisions unfavorable to claimants because those reasons allow claimants to better understand the dispositions of their cases." *McCleese v. Saul*, No. 1:18-CV-04494, 2019 WL 3037308, at *15 (S.D.N.Y. June 26, 2019) (quoting *Sink v. Berryhill*, No. 16-CV-1094, 2019 WL 1915291, at *4 (S.D.N.Y. Apr. 29, 2019) (other citations omitted)).

Finally, plaintiff argues that the ALJ's evaluation of plaintiff's testimony was insufficient and additional grounds for remand. The ALJ wrote that plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record "for the reasons explained in [his] decision." (T. 26). However, completely absent from his determination is any meaningful evaluation of plaintiff's testimony. In support of his finding, the ALJ merely concluded that, "[in] general, the medical documentation simply does not support the allegations of complete preclusion of usefully sustained work

---

[17]However, this court cannot say that Dr. Mohabir's opinions should have been afforded controlling weight as a matter of law. Upon remand, and once the administrative record has been appropriately developed, the ALJ can weigh and evaluate the conflicting medical opinion and other evidence of record, and provide good reasons for his or her findings. *See Gatien v. Berryhill,* No. 15-CV-4739, 2017 WL 6397734, at *6 (E.D.N.Y. Dec. 13, 2017) ("It is the province of the ALJ, not the reviewing court, to weigh and evaluate evidence.") (citing *Aponte v. Secretary, Dep't of Health and Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984) ("It is the function of the [Commissioner], not the reviewing courts, to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant.") (internal citations, quotation marks, and alterations omitted)).

activities." (*Id.*). Accordingly, on remand the ALJ should reconsider his symptom evaluation in light of any revisions he makes to the weight afforded to the various medical opinions, and provide adequate support for his findings.

To the extent plaintiff has identified additional reasons why she contends the ALJ's decision was not supported by substantial evidence, the Court declines to reach these issues. *See Bell v. Colvin*, No. 5:15-CV-01160 (LEK), 2016 WL 7017395, at *10, (N.D.N.Y. Dec. 1, 2016) (declining to reach arguments "devoted to the question whether substantial evidence supports various determinations made by [the] ALJ" where the court had already determined remand was warranted); *Morales v. Colvin*, No. 13-CV-06844, 2015 WL 2137776, at *28 (S.D.N.Y. Feb. 10, 2015) (the court need not reach additional arguments regarding the ALJ's factual determinations "given that the ALJ's analysis may change on these points upon remand").

## VII.  **NATURE OF REMAND**

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard . . . remand to the Secretary for further development of the evidence" is generally appropriate.  *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980). Even though the ALJ's decision is not supported by substantial evidence, this court cannot conclude that "substantial evidence on the record as a whole indicates that the [plaintiff] is disabled."  Thus, I cannot order a remand solely for the determination of benefits.  *See Bush v. Shalala*, 94 F.3d 40, 46 (2d Cir. 1996).

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that the decision of the Commissioner be **REVERSED** and this case

**REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g), for a proper evaluation

of the medical and other evidence, an appropriate determination of plaintiff's residual

functional capacity, and other further proceedings, consistent with this Memorandum-

Decision and Order.

Dated: August 30, 2019

Hon. Andrew T. Baxter
U.S. Magistrate Judge